**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\*\*\*

LAURA TORIELLO,

        Plaintiff,

vs.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

        Defendant.

2:13–cv–0653–LDG–VCF

**REPORT & RECOMMENDATION**

This matter involves Plaintiff Laura Toriello's appeal from Defendant Carolyn W. Colvin's final decision denying Toriello social security benefits. (Compl. (#4) at 2:6–9[1]). Currently before the court is Toriello's motion for reversal (#17). Colvin filed an opposition (#18); and Toriello replied (#19).

**BACKGROUND**

On January 20, 2010, Plaintiff Laura Toriello applied for disability insurance benefits and supplemental security income. (Compl. (#4) at 2:6–10). Toriello's applications were denied initially on June 3, 2010 and upon reconsideration on August 11, 2010. (*See* Admin. Rec. at 15). On July 21, 2011, Toriello and her representative appeared for a hearing before Administrative Law Judge ("ALJ") Michael B. Kennett. (*Id.*) On July 5, 2012, the ALJ issued an unfavorable decision finding that Toriello has not been under a disability, as defined in the Social Security Act. (*Id.*) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Toriello's request for review

---

[1] Pathetical citations refer to the court's docket and the administrative record.

1

on February 22, 2013. (*Id*. at 1). On April 23, 2013, Toriello commenced this action for judicial review pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Fifth Amendment prohibits the government from depriving persons of property without due process of law. U.S. CONST. amend. V. Social security claimants have a constitutionally protected property interest in social security benefits. *Mathews v. Eldridge*, 424 U.S. 319 (1976); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1203 (9th Cir. 1990). When, as here, the Commissioner of Social Security renders a final decision, which denies a claimant's benefits, the Social Security Act authorizes the District Court to review the Commissioner's decision. *See* 42 U.S.C. § 405(g); *see also* 28 U.S.C. § 636(b) (permitting the District Court to refer matters to a U.S. Magistrate Judge).

The District Court's review of the Commissioner's decision is limited. The court reviews the Commissioner's decision to determine whether (1) the Commissioner applied the correct legal standards and (2) the decision is supported by "substantial evidence." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005). Substantial evidence is defined as "more than a mere scintilla" of evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The issue before the court is, therefore, narrow. It is not whether the Commissioner could have reached a different conclusion, which the record may support. It is, rather, whether the decision is supported by enough "evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938) (defining "a mere scintilla" of evidence); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (stating that if the evidence supports more than one interpretation, the court must defer to the Commissioner's interpretation). Stated simply, the Commissioner's decision will be upheld if it has any support in the record. *See, e.g.*, *Bowling v. Shalala*,

36 F.3d 431, 434 (5th Cir. 1988) (stating that the court may not reweigh evidence, try the case *de novo*, or overturn the Commissioner's decision if the evidence preponderates against it).

## DISCUSSION

Toriello challenges the Commissioner's final decision on two grounds. Before addressing these arguments, however, the court must first discuss the statutory groundwork from which Toriello's allegations arise.

*A.  The Statutory Groundwork*

The Social Security Act of 1935 was enacted by President Roosevelt in the wake of the Great Depression "to provide for the general welfare." 79 Cong. Rec. 12793 (1935) (excerpt from Conference Report–Social Security H.R. 7260). The Act recognizes (1) "the Nation's basic commitment . . . to foster the dignity and well-being of all persons within its borders [and (2) that] forces not within the control of the poor contribute to their poverty." *Goldberg v. Kelly*, 397 U.S. 254, 264 (1970) ("Public assistance, then, is not mere charity, but a means to 'promote the general Welfare, and secure the Blessings of Liberty to ourselves and our Posterity.'").

To qualify for benefits under the Social Security Act, the claimant must demonstrate his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). If the claimant establishes an inability to perform his or her prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989). To make this determination, an Administrative Law Judge ("ALJ") at the Social Security Administration evaluates the claimant's claim for benefits according to a five-step process. *See* 20 C.F.R. §§ 404.1520;

416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If at any step the ALJ determines that a finding of nondisability can be made, then a decision is rendered against the claimant and no further evaluation is required. *See* 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4); *see also Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

The five-step process is as follow. First, the claimant must prove that she is not currently engaged in substantial gainful activity. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the claimant must prove that her impairment is "severe" in that it "significantly limits her physical or mental ability to do basic work activities." *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). Third, the claimant must prove that she is disabled. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. To do so, the claimant must demonstrating that her impairments meet or are medically equivalent to one of the impairments listed in the social security regulations at 20 C.F.R. Part 404, Subpart P, App. 1. *Id.* Before considering step four, the ALJ must first determine the individual's residual functional capacity.[2] *See* 20 C.F.R. §§ 404.1520(e), 416.920(e). Fourth, the claimant must prove that she is incapable of meeting the physical and mental demands of her past relevant work. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

If the claimant satisfies her burden under the previous four steps, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work that exists in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g); *Yuckert*, 482 U.S. at 141-42. When making this determination, the ALJ considers the claimant's residual functional capacity, age, education, and past work experience. *Id*. If the Commissioner proves that suitable work exists, the claimant is given the chance to prove that she cannot, in fact, perform that work. *Id*.

---

[2] Residual functional capacity is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments.

4

### B.     *The ALJ's Decision is Supported by Substantial Evidence*

Toriello disputes the Commissioner's findings regarding Toriello's residual functional capacity. Toriello argues that the ALJ incorrectly determined her residual functional capacity because the ALJ (1) misinterpreted Dr. Cestkowski's findings and (2) improperly discredited Toriello's testimony. (Mot. for Reversal (#17) at 8:18, 10:19).

As discussed above, residual functional capacity is a function-by-function assessment of the claimant's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. SSR 96-8p. It is, in laymen's terms, "the most [the claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 404.1545(a). Residual functional capacity is comprised of a claimant's physical abilities, mental abilities and other impairments. *Id*. Residual functional capacity is divided into five exertional categories: (1) sedentary, (2) light, (3) medium, (4) heavy, and (5) very heavy. 20 C.F.R. § 404.1567. In the Ninth Circuit, in determining a claimant's RFC, the ALJ "must consider all relevant evidence in the record, including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Social Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (citation omitted).

For the reasons discussed below, the court finds that the ALJ's decision regarding Toriello's residual functional capacity is supported by substantial evidence.

#### 1.     **The ALJ's Interpretation of the Examining Physician's Report is Supported by Substantial Evidence**

Toriello argues that the ALJ's residual functional capacity determination is not supported by substantial evidence because the ALJ misinterpreted an examining physician's report. (Mot. for Reversal (#17) at 8:18). In response, the Commissioner argues that the ALJ properly interpreted the examining physician's report. (Def.'s Opp'n (#18) at 11). The court agrees.

On December 14, 2011, an orthopedic consultative examiner, Richard Cestkowski, D.O., examined Toriello. (*See* Admin. Rec. at 22, 312–323). Part of Dr. Cestkowski's report includes a chart that indicates how many hours Dr. Cestkowski believes Toriello can sit, stand, and walk in an eight hour day. (*Id*. at 319). Dr. Cestkowski marked that Toriello can: (1) sit for six hours in an eight hour day; (2) stand for four hours in an eight hour day; and (3) walk for four hours in an eight hour day. (*Id*.) Based off of these findings, the ALJ concluded that "[Toriello can] stand and walk for 4 hours each in an 8-hour workday (i.e., she can be on her feet for 8 hours of an 8-hour workday), and sit for at least 6 hours of an 8-hour workday." (*Id*. at 23). Toriello, however, argues that in concluding that Toriello can "tolerate weight bearing on her feet for 8 hours in an 8-hour day . . . the ALJ found something that Dr. Cestkowski simply never said." (Mot. for Reversal (#17) at 9:1–2).

This argument is unpersuasive. By definition, standing and walking entail weight bearing. *See* MERRIAM-WEBSTER (3d ed. 2010) (defining "stand" as "to be in an upright position with all of your weight on your feet and "walk" as "to move with your legs at a speed that is slower than running"). Toriello's argument that the ALJ erroneously added the four hours relegated to standing with the four hours relegated to walking is also unpersuasive. The form that Dr. Cestkowski completed expressly states that the time relegated to sitting, standing, and walking are to be considered within the context of a single, eight-hour workday: "If the total time for sitting, standing, and walking does not equal or exceed 8 hours, what activity is the individual performing for the rest of the 8 hours?" (Admin. Rec. at 319). Based on the chart's plain language, the court concludes that the ALJ's finding is supported by substantial evidence because "a reasonable mind might accept" that a claimant can tolerate weight bearing on her feet for eight hours if the claimant's physician concluded that the claimant can both (1) stand for four fours in an eight hour day and (2) walk for four hours in an eight hour day. *Consolidated Edison Co*., 305 U.S. at 197 (defining the scintilla of evidence standard).

This conclusion is bolstered by the fact that Dr. Cestkowski choose not to answer the question, "If the total time for sitting, standing, and walking does not equal or exceed 8 hours, what activity is the individual performing for the rest of the 8 hours?" (*See* Admin. Rec. at 319). Had Dr. Ceskowski believed that Toriello could not tolerate weight bearing on her feet for eight hours, he could have answered the question by stating that Toriello would be resting or eating. (*See* Mot. for Reversal (#17) at 9:8–10) (arguing that the ALJ erred because the ALJ interpreted Dr. Cestkowski's report as not permitting time for "a lunch break.").

**2.     The ALJ's Credibility Findings are Supported by Substantial Evidence**

Toriello also argues that the ALJ improperly discredited her oral testimony. (Mot. for Reversal (#17) at 10–14). During the administrative hearing, Toriello testified that a left foot injury rendered her disabled because it impedes her lifting, bending, standing, reaching, walking, sitting, remembering, and concentrating. (*See* Admin. Rec. at 20). The ALJ discredited Toriello's testimony because it was inconsistent with (1) Toriello's activities of daily living, (2) objective medical evidence, and (3) evidence of record. (*Id.*)

When evaluating a claimant's credibility, the ALJ is required to engage in a two-step analysis. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the alleged pain. *Id.* at 1036 (internal citations and quotation marks omitted). Only if the claimant satisfies the first step may the ALJ proceed to the second step.[3] Here, if there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if the ALJ gives "specific, clear and convincing reasons." *Id.* "Factors that an ALJ may

---

[3] Toriello did not argue that and she "presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the alleged pain." *Lingenfelter*, 504 F.3d at 1035–36. She has, therefore, failed to satisfy her burden. (*See generally* Mot. for Reversal (#17) at 10–15).

consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007) (internal quotation marks and citations omitted); *see also* 20 C.F.R. §§ 404.1529(c); 416.929(c) (listing the credibility factors). The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir. 1991) (en banc)).

The ALJ's decision satisfies this standard. In rejecting Toriello's testimony, the ALJ cited three specific inconsistencies between Toriello's testimony and the administrative record. (*See* Admin. Rec. at 20). The ALJ discussed each inconsistency in sequential paragraphs. (*See id.*) Each paragraph (1) identified an inconsistency and (2) provided clear and convincing reasons justifying the ALJ's conclusion that an inconsistency, in fact, exists in the record. The court, therefore, concludes that the ALJ's decision is "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza*, 50 F.3d at 750. Each inconsistency is discussed below.

First, the ALJ found that Toriello's oral testimony was inconsistent with her activities of daily living. (*Id.*) The court concludes that the ALJ supported this finding with clear and convincing reasons because the ALJ noted several contradictions between Toriello's testimony and her activities of daily living. For instance, although Toriello testified to being unable to lift, bend, stand, reach, walk, sit, remember, or concentrate, the ALJ noted that her activities of daily living include the following tasks: personal care, meal preparation, chores, driving, shopping, handling money, computer use, walking her dogs, playing games, and regular exercise. (*Id.*) These two lists are self-evidently contradictory. A

reasonable fact finder could easily conclude that shopping requires lifting, bending, standing, reaching, walking, and remembering; whereas handling money requires concentration. Additionally, Toriello's testimony that she is unable to sit is contradicted by Dr. Cestkowski determination that Toriello can sit for four hours at a time. (*See* Admin. Rec. at 319). The court, therefore, must uphold the ALJ's credibility finding because it is rooted in the record and a reasonable mind might accept that the record is contradictory. *See Orteza*, 50 F.3d at 750.

Second, the ALJ found that Toriello's testimony was inconsistent with objective medical evidence. (*See* Admin. Rec. at 20). The court concludes that the ALJ supported this finding with clear and convincing reasons because the ALJ noted a contradiction between Toriello's testimony and the objective medical evidence. For instance, although the claimant alleged she was disabled because of neck pain, back pain, and arthritis, the ALJ found that Toriello's medical records are devoid of evidence of any conditions that would give rise to such pain. (*Id.*) This inconsistency satisfies the clear and convincing reasons standard because it demonstrates that the ALJ's decision is rooted in the record and not arbitrary. *See Orteza*, 50 F.3d at 750.

Third, the ALJ found that Toriello's testimony was inconsistent with other evidence of record. (*See* Admin. Rec. at 20). The court concludes that the ALJ supported this finding with clear and convincing reasons because the ALJ articulated a clear contradiction between Toriello's testimony and evidence provided by the orthopedic consultative examiner. (*Id.*) Whereas Toriello reported having trouble walking, the orthopedic consultative examiner stated that Toriello "has a normal gait." (*Id.*); *see also* MERRIAM-WEBSTER (3d ed. 2010) (defining "gait" as "a person's manner of walking). As a result of this contradiction, the ALJ discredited Toriello's testimony. (*Id.*) This satisfies the clear and convincing reasons standard because it demonstrates that the ALJ's decision is rooted in the record and not arbitrary. *See Orteza*, 50 F.3d at 750.

9

ACCORDINGLY, and for good cause shown,

IT IS RECOMMENDED that Plaintiff Laura Toriello's Motion for Reversal (#17) be DENIED.

IT IS SO RECOMMENDED.

DATED this 13th day of November, 2013.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE